**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSE C. GOMEZ,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>RANDY GROUNDS, Warden,<br><br>　　　　　Respondent. | Case No. SA CV 10-0681 DSF (JCG)<br><br>**ORDER ADOPTING FINDINGS, CONCLUSIONS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

**I.**

**INTRODUCTION AND SUMMARY**

On March 18, 2010, petitioner Jose C. Gomez ("Petitioner"), a California prisoner incarcerated at Correctional Training Facility and proceeding *pro se*, filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition") pursuant to 28 U.S.C. § 2254 in the Southern District of California.

On May 19, 2010, the case was transferred to the Central District of California. *See Gomez v. Grounds*, Civil No. 10-0916 BEN (PCL), at 3 (S.D. Cal. May 19, 2010) (order transferring case).

On September 24, 2010, Respondent filed a Motion to Dismiss the Petition ("Motion"), asserting that the Petition is barred by the one-year statute of limitation

set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1).

On November 29, 2010, Petitioner filed an Opposition to the Motion ("Opposition").

On January 6, 2011, the Magistrate Judge issued his Report and Recommendation ("R&R"), recommending that Respondent's Motion be granted and that judgment be entered dismissing this action with prejudice. (*See* R&R at 2, 12.)

On February 14, 2011, Petitioner filed Objections to the R&R ("Objections").

The Court will address the arguments made in Petitioner's Objections and further expand upon the Magistrate Judge's denial of his actual innocence claim. (*See* Opp. at 6-7; Objs. at 3-7.) As to the latter, the Magistrate Judge relied on the Ninth Circuit's decision in *Lee v. Lampert*, 610 F.3d 1125, 1136 (9th Cir. 2010), which was recently vacated and the case ordered to be reheard *en banc*. *Lee v. Lampert*, 2011 WL 499347, at *1 (9th Cir. Feb. 8, 2011).

Now, having conducted a *de novo* review, including studying the Motion, the Opposition, the R&R, and the Objections, the Court is persuaded that the Petition is untimely. This Court, therefore, adopts the findings, conclusions, and recommendations of the Magistrate Judge.

## II.
## DISCUSSION AND ANALYSIS

A.  Equitable Tolling

Petitioner first makes two arguments to explain his delay in filing a timely federal petition. First, he contends he is entitled to equitable tolling because he "was relying on inmates assisting him due to his language barrier and his not understanding the law." (Objs. at 2.) Second, he maintains that he delayed in filing his second habeas petition in the California Court of Appeals because he "had no idea what was going on" and attempted to file habeas petitions earlier, which were

1 not accepted by the appellate court, and he "was transferred to another prison on
2 10/01/08. . . . [and, due to a lockdown at the new facility,] was not able to go to the
3 law library to continue with [his] case and find someone to help [him] until about
4 mid November." (*Id.*)

5 Neither of Petitioner's contentions are persuasive. Four reasons govern this
6 determination.

7 First, Petitioner bears the burden to demonstrate that he diligently pursued his
8 claims during the limitation period, including *by attempting to overcome his*
9 *language barrier*. One is not categorically included into the purview of equitable
10 tolling by virtue of merely being a non-English speaker. As the Ninth Circuit
11 explained in *Mendoza v. Carey*, a non-English speaking petitioner who desires
12 equitable tolling of the AEDPA time limitation must show "diligent efforts" to
13 procure legal materials in his own language or otherwise seek translation from any
14 source. 449 F.3d 1065, 1070 (9th Cir. 2006). Likewise, in *Nguyen v. Lamarque*, the
15 Ninth Circuit held equitable tolling was inappropriate where a petitioner failed to
16 show that he pursued his claims diligently despite his language barrier and nothing
17 existed in the record to demonstrate diligence. 203 Fed.Appx. 762, 763-64 (9th Cir.
18 2006).

19 Similarly here, the Court cannot discern from the record, as was Petitioner's
20 burden, whether Petitioner exercised due diligence, such as searching for foreign
21 language legal materials or seeking an interpreter or translator. (*See generally* Objs.
22 at 1-7.)

23 Second, Petitioner has not alleged, nor does the record show, any facts that
24 demonstrate a *causal* relationship between Petitioner's difficulty with English and
25 his failure to timely file the instant Petition. (*See generally* Objs. at 1-7.) To the
26 contrary, Petitioner was able to file his English-language legal documents in his state
27 proceedings, and in the current proceedings – all notwithstanding his purported
28 language barrier. (*See, e.g.*, Lodg. No. 3); *see Romero v. Sullivan*, 2009 WL

3

3698090, at *1 (C.D. Cal. 2009) (petitioner failed to make adequate showing for equitable tolling due to language barrier where he filed other habeas petitions during relevant time period).

Third, with respect to Petitioner's assertion that he "was relying on inmates assisting him due to . . . his not understanding the law," (Objs. at 2), it is well established that a criminal defendant has no constitutional right to counsel in state or federal habeas corpus proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("the right to appointed counsel extends to the first appeal of right, and no further[]"); *Bonin v. Vasquez*, 999 F.2d 425, 429 (9th Cir. 1993) ("Clearly, there is no constitutional right to counsel [i]n habeas [proceedings].").

State prisoner habeas petitions are commonly filed on a *pro se* basis. To allow equitable tolling based on the fact that most prisoners do not have legal knowledge or training would create a loophole that would wholly negate the intent and effect of the AEDPA limitation period. Under the circumstances here, Petitioner's *pro se* status is insufficient to warrant the granting of equitable tolling. *See, e.g., Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) ("a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling[]"); *Chaffer v. Prosper*, 592 F.3d 1046, 1049 (9th Cir. 2010) (*per curiam*) (prisoner's *pro se* status, law library missing reporter volumes, and reliance on inmate helpers who were transferred or too busy to attend to his petitions are not extraordinary circumstances "given the vicissitudes of prison life").

Fourth, as courts routinely recognize, transfers between prison facilities and lockdowns do not generally constitute extraordinary circumstances that warrant the granting of equitable tolling. "In general, the difficulties attendant on prison life, such as transfers between facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents, do not by themselves qualify as extraordinary circumstances." *Corrigan v. Barbery*, 371 F.

1  Supp. 2d 325, 330 (W.D.N.Y. 2005); *see also Lindo v. Lefever*, 193 F. Supp. 2d 659,
2  663 (E.D.N.Y. 2002) ("Transfers between prison facilities, solitary confinement,
3  lockdowns, restricted access to the law library and an inability to secure court
4  documents do not qualify as extraordinary circumstances.").

        B.     Actual Innocence

6         In his Opposition and his Objections, Petitioner also contends that his gateway
7  claim of actual innocence presents an exception to the statute of limitation. (Opp. at
8  6-7; Objs. at 3-7.) In particular, Plaintiff asserts that "[i]n early 2005, it was
9  discovered through the efforts of petitioner and petitioner's family that key
10 witnesses had been unavailable and other key witnesses (Mr. Carpenter and Mr.
11 Carrillo) had been coerced by police authorities into testifying falsely at trial against
12 Petitioner[.]" (*See* Objs. at 3.)

13        To establish his claim of actual innocence, Petitioner relies on six alibi
14 affidavits. (*See* Objs. at 4.) Petitioner maintains that "[t]hose exculpating witnesses
15 had not been interviewed by trial counsel, so trial counsel did not unearth the
16 information that would have allowed him to effectively cross examine the witnesses
17 and cause them to either recant their testimonies and or testify that [Petitioner] was
18 not at the scene of the crime." (*Id.*)

19        The Ninth Circuit has not conclusively decided the issue raised by Petitioner
20 and the Court sees no need to do so in this case. *See Lee*, 2011 WL 499347, at *1;
21 *Majoy v. Roe*, 296 F.3d 770, 776 (9th Cir. 2002). To establish a gateway claim of
22 actual innocence, Petitioner "must show that in light of all the evidence . . . 'it is
23 more likely than not that no reasonable juror would have found petitioner guilty
24 beyond a reasonable doubt.'" *Carriger v. Stewart*, 132 F.3d 463, 478 (9th Cir. 1997)
25 (*en banc*), *cert. denied*, 523 U.S. 1133 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298,
26 327 (1995)).

27        Because post-trial affidavits are "obtained without the benefits of cross-
28 examination," *Herrera v. Collins*, 506 U.S. 390, 417 (1993), they "are to be treated

with a fair degree of skepticism." *Id.* at 423. Petitioner's affidavits are no exception. The alibi affidavits emerged roughly five years after Petitioner's trial, with "[n]o satisfactory explanation . . . given as to why" the declarants waited so long to come forward. *Id.* at 417; (*compare* Objs. at 4 (affidavits signed in January of 2008) *with* Pet. at 2 (Petitioner convicted on July 3, 2003)).

Moreover, the supposedly new facts proffered by Petitioner are implausible on their face. Petitioner asserts that the affidavits show that Mercedes Medina "was with Petitioner from 9:00 p.m. through 2:45 a.m. of September 30, 1995 through October 1, 1995; that Petitioner took her and her friend Alejandra Galicia to Orchid's night club. Alejandra's testimony would have corroborated this fact because she also saw petitioner and was within his presence at the time that the murder was committed." (Objs. at 6.)

However, at trial, Petitioner testified that, while he was not present at the scene of the crime, he could not recall where he was that night. (*See* Lodg. No. 1 at 7.) In fact, Petitioner asserted on cross-examination, "when asked whether he 'made any effort to try to figure out' his location that night, [Petitioner] replied: 'No. I never thought – I never started thinking where I was, no." (*Id.*) Petitioner "further testified he made no effort to contact his old girlfriend or other friends from that time period. He could not recall any particularly memorable events, such as birthdays, for the month of October, nor did the dates of September 30 or October 1 hold any particular significance for him." (*Id.*)

Accordingly, at most, the affidavits, viewed as a whole, do nothing more than perhaps "undercut the evidence presented at trial," but do "not affirmatively . . . prove [Petitioner's] innocence." *Carriger*, 132 F.3d at 477.

### III.
### CONCLUSION

Based on the foregoing and pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, all of the records herein, the Report and Recommendation of

6

1 the United States Magistrate Judge, and the Objections to the Report and
2 Recommendation. The Court has made a *de novo* determination of the portions of
3 the Report and Recommendation to which Objections were directed. The Court
4 concurs with and adopts the findings and conclusions of the Magistrate Judge.
5 Accordingly, IT IS ORDERED THAT:
6     1.    Judgment shall be entered dismissing the action with prejudice.
7     2.    The Clerk shall serve copies of this Order and the Judgment herein on
8 the parties.

    DATED: 3/7/11

                                                             _____
                                                              HON. DALE S. FISCHER
                                                    UNITED STATES DISTRICT JUDGE